EUGENE ALLEN BLATZ *v.* STATE OF INDIANA

[No. 3-476A93. Filed December 5, 1977. Rehearing denied January 11, 1978. Transfer denied August 16, 1978.]

---

2. In the same report, Sleck indicated that he had been injecting heroin daily for the last three years.

*John F. Hoehner*, of Valparaiso, for appellant.

*Theodore L. Sendak*, Attorney General, *Elmer Lloyd Whitmer*, Deputy Attorney General, for appellee.

HOFFMAN, J.—Defendant-appellant Eugene Allen Blatz was convicted by a jury of the crime of theft[1] and sentenced to a term of not less than one nor more than ten years.

This appeal raises the single issue of whether the trial court committed error by admitting into evidence the inculpatory statement made by the appellant to the police more than four days after his arrest.

Shortly after ten o'clock on the evening of March 12, 1975, police officers Clemmons and Shocaroff were on routine patrol in Hobart, Indiana. They observed three men, one of whom was later identified as Blatz, attempting to free a car that had become mired in the front lawn of a residence. The officers made a computer check of the license plate and vehicle identification numbers, which revealed that the automobile had been stolen two days earlier in Chesterton, Indiana. Blatz and the two juveniles were then arrested and advised of their constitutional rights. Blatz was transported to the Hobart City jail.

On the following day, March 13, 1975, Lieutenant Killosky of the Chesterton Police visited the defendant at the Hobart jail.

1. IC 1971, 35-17-5-3 (Burns Code Ed.).

Killosky read a waiver of rights form to Blatz and asked if he had any questions. Blatz, an individual whose schooling consisted of eight years special education, signed the waiver form. Killosky sought a statement from the defendant, but Blatz declined and requested an attorney.

On March 14, Killosky returned to Hobart with a warrant for the arrest of Eugene Allen Blatz on a charge of unauthorized control of a motor vehicle. Killosky then transported Blatz to the Porter County jail.

Killosky next spoke to defendant Blatz on Monday, March 17, 1975. Blatz read and signed a waiver of rights card and gave a statement of Killosky.

Blatz was charged with theft by an information filed on March 18, 1975. On March 19, six days after his arrest, Blatz made his initial appearance before a judge at which time pauper counsel was appointed.

By a pre-trial motion to suppress, the defendant sought to have the incriminating statement excluded from evidence. The motion was denied on June 24, 1975.

At the pre-trial suppression hearing the State had a heavy burden to prove beyond a reasonable doubt that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. *Burton v. State* (1973), 260 Ind. 94, 292 N.E.2d 790; *Nacoff v. State* (1971), 256 Ind. 97, 267 N.E.2d 165. The legal standard to be applied is whether, looking at all the circumstances, the confession was free and voluntary, and not induced by any violence, threats, promises, or other improper influences. *Burton v. State, supra; Nacoff v. State, supra.*

The circumstances revealed by the record are as follows:

Appellant was eighteen years old. He had only eight years of schooling, and that was special education for the slow learner. Fifteen hours after his arrest, the appellant signed a waiver of rights, requested an attorney, but gave no statement. Appellant's request for counsel was

apparently ignored since no effort was made to promptly take Blatz before a magistrate as required by IC 1971, 18-1-11-8 (Burns Code Ed.). Since the appellant lacked funds sufficient to retain counsel, only a court-appointed attorney could satisfy appellant's right to counsel. Thus, appellant's lack of funds and the delay in taking him before a magistrate prevented Blatz from conferring with an attorney prior to making the incriminating statement.

Appellant signed two printed waiver of rights forms. The first form was nullified by appellant's immediate request for legal counsel. The second form was executed more than four days after appellant's arrest. The fact that Blatz signed these forms is not conclusive of a knowing and voluntary waiver. *Dickerson v. State* (1972), 257 Ind. 562, 276 N.E.2d 845; *Bauer v. State* (1973), 157 Ind. App. 400, 300 N.E.2d 364.

The appellant had an absolute right to remain silent and to have an attorney, either retained or appointed, present during any interrogation by the police. *Miranda v. State of Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; *Malloy v. Hogan* (1964), 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653.

In *Miranda* the Supreme Court of the United States stated:

"Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused person of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." (Footnote omitted). (384 U.S. at 444, 86 S.Ct. at 1612).

According to the testimony of Lieutenant Killosky, Blatz was advised of these rights on March 13, 1975. The defendant then signed a waiver of rights form. However, after signing the form, the defendant expressed a desire to confer with an attorney. At that point the police should have terminated questioning until Blatz had consulted with an attorney. As the Supreme Court stated in *Miranda*:

> "The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned. (384 U.S. at 444-45, 86 S.Ct. at 1612.)

* * * * *

> "If an individual indicates that he wishes the assistance of counsel before any interrogation occurs, the authorities cannot rationally ignore or deny his request on the basis that the individual does not have or cannot afford a retained attorney. The financial ability of the individual has no relationship to the scope of the rights involved here. (384 U.S. at 472, 86 S.Ct. at 1626-27.)

* * * * *

> "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent." (384 U.S. at 474, 86 S.Ct. at 1628.)

On March 14, Blatz was moved to the Porter County jail. Then on Monday, March 17, Killosky again sought a statement from Blatz. The defendant, having been detained for four days, signed a second waiver of rights and gave the incriminating statement.

A crucial factual question in this context is whether the defendant conferred with an attorney prior to making the statement. The testimony of police officer Killosky is the only evidence on this point.

Two days before trial a hearing was held on defendant's motion to suppress. Officer Killosky gave the following testimony in reference to the legal representation of the defendant:

"Q. At the time that the defendant gave the statement to you on the 17th day of March did the defendant have an attorney with him?

"A. No, he didn't.

"Q. To the best of your knowledge did he have an attorney at any time during the 13th, 14th or 17th?

"A. Not of my knowledge.

"Q. To your knowledge did he have an opportunity to discuss this with an attorney on either the 13th, 14th, or 17th?

"A. I don't know."

A careful reading of the record on this point reveals no evidence that the defendant retained an attorney or received any legal advice.

Appellant was detained more than ninety-six hours before he made a statement. There is no evidence to show that appellant conferred with an attorney during that time. Furthermore, Blatz was not promptly taken before a magistrate as required by IC 1971, 18-1-11-8, *supra*. This practice of prolonged detention without judicial hearing has been strongly criticized by this court in *Grimes v. State* (1976), 170 Ind. App. 525, 353 N.E.2d 500; *Crawford v. State* (1973), 156 Ind. App. 593, 298 N.E.2d 22. That disapproval is renewed here. For in this case appellant's statement followed a period of detention whcih exceeded the forty-eight-hour maximum prescribed by IC 1971, 18-1-11-8, *supra*. Furthermore, after giving the statement, appellant was held for an additional two days before his initial judicial hearing.

In Indiana, delay in bringing a defendant before a judge "is but one factor to be considered in determining the admissibility of a

confession taken more than six hours after a defendant's arrest." *Apple v. State* (1973), 158 Ind. App. 663, 671, 304 N.E.2d 321, 325; IC 1971, 35-5-5-3 (Burns Code Ed.). That single factor is significant in the case at bar in light of appellant's request for counsel, since it aided the denial of counsel to the indigent suspect.

After examining all of the circumstances surrounding the confession, it is clear that appellee did not carry its burden of showing that appellant made a voluntary and knowing waiver of his rights to remain silent and to have an attorney present during interrogation.

Thus, the trial court committed reversible error when it admitted the statement into evidence over the objection of the appellant.

This error is not harmless since the statement is an essential part of the State's case against Blatz.

The judgment is reversed and this cause remanded for a new trial.

Staton, P.J. and Garrard, J. concur.

NOTE—Reported at 369 N.E.2d 1086.