Ronnie L. PATRICK,
Plaintiff–Appellant,

v.

JASPER COUNTY and Sheriff Terry Gilliland, Defendants–Appellees.

No. 88–2152.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 15, 1989.

Decided April 12, 1990.

Hugo E. Martz, Robert D. Truitt, Lyons & Truitt, Valparaiso, Ind., for plaintiff-appellant.

J. Philip Klingeberger, Asst. U.S. Atty., Hammond, Ind., Harry Jennings, Theresa L. Springmann, Spangler, Johnson & Associates, Merrillville, Ind., Shaw R. Friedman, Boklund & Yandt, LaPorte, Ind., for defendants-appellees.

Before COFFEY, EASTERBROOK and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

Plaintiff–Appellant Ronnie Patrick appeals the order of the district court granting summary judgment for defendants-appellees, Jasper County, Indiana, and Jasper County Sheriff Terry Gilliland in this action filed under 42 U.S.C. § 1983. We affirm.

I.

At approximately 4:00 a.m. on Friday, December 10, 1982, Patrick, accompanied by Ed Ritchie and Ollie Bailey, drove to the Jack Lucas residence in rural Jasper County, Indiana, to retrieve Ritchie's company truck. Upon arriving at Lucas's home, the three men were confronted by law enforcement officials of the United States Drug Enforcement Administration ("DEA") and the Indiana State Police ("ISP"), who informed them that they had "walked into a drug bust." [1] Upon learning Bailey's identity, the law enforcement officials immediately arrested him pursuant to a warrant and took him into custody. The law enforcement officers thereafter searched Patrick and Ritchie to determine if they were in possession of narcotics and/or weapons. Although finding no narcotics in Patrick's possession, the officers did discover three weapons concealed under his jacket: a loaded and cocked .45 caliber semiautomatic handgun for which Patrick did not have a valid license, a Swiss army knife, and a six-inch double-edged field knife. The record does not reflect whether the officers found Ritchie to be in possession of either weapons or narcotics.

Patrick and Ritchie were subsequently arrested for visiting a common nuisance, transported to the Indiana State Police Post in Lowell, Indiana, and detained for several hours. Due to the large number of individuals arrested in association with the "drug bust," the Lowell facility became overcrowded and ISP officials made arrangements to transfer Patrick and some sixty to eighty other detainees, including Ritchie, to the Jasper County Jail in Rensselaer, Indiana, for booking, fingerprinting, photographing and criminal record "wanted" checks. In his deposition, Patrick stated that while he was being booked, he overheard Sheriff Gilliland tell the ISP offi-

---

1. The "drug bust" was the culmination of an extensive DEA/ISP investigation into a large-scale marijuana harvesting and smuggling operation in northern Indiana. In early December 1982, undercover law enforcement officers negotiated with several individuals, including Jack Lucas and Ollie Bailey, for the delivery of sever-
al thousand pounds of marijuana. Immediately prior to the arrival of Patrick, Ritchie and Bailey at the Lucas residence, the undercover officers seized one ton of marijuana from Lucas's residence and arrested him, as well as three other individuals participating in the delivery.

cer "that he [Gilliland] just got off the phone with the Prosecuting Attorney [then-Jasper County Prosecutor, Thomas Fisher]. And he says, 'We can hold him for seventy-two hours without charges.' And he says, 'By then we should come up with something.'" Patrick was detained in the Jasper County Jail for approximately four hours (9:40 a.m. to 1:15 p.m.), but, due to overcrowding, Sheriff Gilliland requested his transfer to another facility. After Gilliland made the necessary arrangements with LaPorte County Sheriff Jan Rose, Patrick was transported by an ISP officer to the LaPorte County Jail, in LaPorte, Indiana, where he was held for an additional thirty-six hours and released on bail after posting bond on Sunday, December 12, 1982.[2] Patrick was not taken before a magistrate for a determination of probable cause to detain him pending the filing of formal charges during his forty hours of confinement. An *ex parte* probable cause hearing was held on Monday, December 13, 1982, after the Jasper County Prosecutor filed a criminal information charging Patrick with dealing in marijuana, a Class C felony in Indiana. *See* Ind.Code § 35–48–4–10(b)(2). However, Jasper County Superior Court Judge J. Philip McGraw dismissed the charge for lack of probable cause and denied the prosecutor's request for the issuance of a warrant to arrest Patrick.[3]

Patrick filed this 42 U.S.C. § 1983 action in the district court on December 10, 1984, against Jasper County, Sheriff Terry Gilliland, individually and in his official capacity as Jasper County Sheriff, LaPorte County and Sheriff Jan Rose, individually and in his official capacity as LaPorte County Sheriff,[4] alleging that they had "unlawfully

detain[ed] him without a valid arrest warrant, probable cause or other legal basis" in violation of the fourth and fourteenth amendments.[5] On December 1, 1987, Jasper County and Sheriff Gilliland ("Jasper County defendants") filed a motion for summary judgment, arguing that they had not violated Patrick's constitutional rights because his four-hour detention in the Jasper County Jail was not unreasonably long. Further, Sheriff Gilliland argued that he was entitled to qualified immunity because his conduct did not violate clearly established law at the time of Patrick's detention.[6] Finally, Jasper County argued that it was entitled to judgment as a matter of law because Patrick had failed to present any evidence on the question of whether Patrick's allegedly unconstitutional detention had been caused by an official policy or custom of the Jasper County Prosecutor's office and Sheriff's Department. LaPorte County and Sheriff Rose ("LaPorte County defendants") had filed a similar motion on November 30, 1987.

On May 26, 1988, the district court granted the Jasper County defendants' motion, finding that Patrick's statement in his deposition reiterating the conversation between Sheriff Gilliland and the Jasper County Prosecutor was inadmissible hearsay and that, in any event, the conversation was insufficient to establish policy or custom on the part of Jasper County. The court further found: "Gilliland could establish policy for Jasper County for any unconstitutional detention of Patrick.... However, in Answers to Interrogatories, Jasper County stated that the County had a legal duty to accept prisoners produced by federal or state government law enforce-

2. Although other detainees, including Ritchie, were transported to the LaPorte facility with Patrick, the record does not reflect the number of individuals actually transferred.

3. Charges were again filed against Patrick in April 1983, but were again dismissed for lack of probable cause.

4. In his complaint, Patrick also named as defendants the United States, the State of Indiana and various federal and state law enforcement officers. The district court granted summary judg-

ment for these defendants on May 26, 1988. Patrick has not appealed the disposition of his claims against these defendants and, thus, we will discuss them only to the extent that they are relevant to his claims against Sheriff Gilliland and Jasper County.

5. Patrick also alleged several state law claims against the defendants, none of which are relevant to this appeal.

6. *See Harlow v. Fitzgerald,* 457 U.S. 800, 815–17, 102 S.Ct. 2727, 2736–38, 73 L.Ed.2d 396 (1982).

ment officials. Jasper County also stated that Gilliland asked the State Police to find another jail for Patrick due to overcrowding and that Patrick was transferred to LaPorte County Jail. Patrick does not dispute that Gilliland's actions were taken pursuant to Indiana Code §§ 10–1–1–22 and 35–33–11–3. Patrick was transferred within four to six hours of his arrival at the Jasper County Jail. The statement made by Gilliland that Patrick could be held for seventy-two hours is irrelevant. Patrick was held only four to six hours at the Jasper County Jail, and Patrick does not dispute this. Instead, Patrick attempts to establish a custom or policy via joint action between Jasper County and LaPorte County. This, in essence, is a conspiracy claim, and Patrick's Motion to Amend has been denied on that basis. Patrick does not claim that his detention for four to six hours was excessive.[7] In addition, he does not dispute that Gilliland requested that he be transferred to another facility. Certainly Patrick cannot argue that the Jasper County Sheriff has authority to dictate the actions of the LaPorte County Sheriff. Because his conspiracy and/or custom or policy claims are insufficient, his claims against Jasper County and Gilliland also must fail. As such, Patrick's allegations are insufficient to state an unconstitutional policy or custom as regards Jasper County rendering summary judgment appropriate."

*Patrick v. United States*, No. H 84–808, slip op. at 19–20 (N.D.Ind. May 26, 1988).[8]

The court, however, denied the LaPorte County defendants' summary judgment motion, finding that the evidence in the record was insufficient to determine whether the thirty-six hours Patrick was detained

in the LaPorte County Jail was "the minimum period of time necessary to process charges against Patrick and to conduct a probable cause hearing." [9] Shortly after the trial court's denial of their summary judgment motion, the LaPorte County defendants offered and Patrick accepted an out-of-court settlement in lieu of trial on Patrick's claims under section 1983.

Patrick now appeals the district court's grant of summary judgment in favor of Sheriff Gilliland and Jasper County, arguing that: (1) Patrick's deposition testimony relating the conversation between the Jasper County Prosecutor and Sheriff Gilliland was not hearsay; (2) the conversation between the prosecutor and Sheriff Gilliland in which the prosecutor stated that Patrick could be held for seventy-two hours without charges being filed, as well as Gilliland's actions in detaining and transferring Patrick, constitute an official policy of Jasper County within the meaning of 42 U.S.C. § 1983; and (3) Patrick's transfer to the LaPorte County Jail was in violation of Indiana Code § 35–33–11–3 and, thus, amounts to an unlawful transfer in violation of the fourth, fifth and fourteenth amendments. Jasper County and Sheriff Gilliland argue that Patrick has failed to raise an issue of material fact on the question of whether the length of his detention in the Jasper County Jail was unconstitutional and, further, urge us to affirm the district court's finding that Patrick has failed as a matter of law to establish that his detention resulted from an unconstitutional policy or custom of Jasper County.

■ At the outset, we note that we review *de novo* the district court's grant of summary judgment for Jasper County and

---

7. In a footnote, the court stated: "Given the undisputed fact that Patrick was arrested at 4 a.m. along with 84 other individuals, it would be difficult for Patrick to contend that it was unreasonable for Jasper County not to have processed all of the defendants before noon that day."

8. The district court did not address Sheriff Gilliland's claim that he was entitled to qualified immunity. Gilliland has not raised this issue on appeal; thus, we will not address it in this opinion.

9. The district court also determined Sheriff Rose was not entitled to qualified immunity because in light of *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), and *Dommer v. Hatcher*, 427 F.Supp. 1040, 1042 (N.D.Ind.1975), *rev'd in part on other grounds sub nom. Dommer v. Crawford*, 653 F.2d 289 (7th Cir.1981), the law regarding pretrial detention was clearly established at the time Patrick was incarcerated in the LaPorte County facility. *See Harlow v. Fitzgerald, supra*, note 6.

Sheriff Gilliland to determine whether there exists no genuine issue of material fact and whether the defendants are entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c).

"In reviewing a grant of summary judgment, we must view the record and all inferences drawn therefrom in the light most favorable to the party opposing the motion. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Illinois v. Bowen*, 808 F.2d 571, 574 (7th Cir.1986). However, when confronted with a motion for summary judgment, a party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party must do more than simply 'show there is some metaphysical doubt as to the material facts.' *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted). 'Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." ' *Id.* at 587, 106 S. Ct. at 1356 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S. Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). 'The court should neither "look the other way" to ignore genuine issues of material fact, nor "strain to find" material fact issues where there are none....' *Secretary of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir.1987) (quoting *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498 (7th Cir 1972))."

*Beard v. Whitley County REMC*, 840 F.2d 405, 409–10 (7th Cir.1988). With these guidelines in mind, we turn to the merits of Patrick's appeal.

## II.

In order for Patrick to prevail on his claim brought pursuant to 42 U.S.C. § 1983,[10] he must establish that: "(1) [he] held a constitutionally protected right; (2) [he was] deprived of this right in violation of the Constitution; (3) the defendants intentionally caused this deprivation; and (4) the defendants acted under color of [state] law." *Donald v. Polk County*, 836 F.2d 376, 379 (7th Cir.1988). Additionally, to hold Jasper County liable under section 1983, Patrick must demonstrate that the constitutional deprivation was caused by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the County's] officers." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978); *Bergren v. City of Milwaukee*, 811 F.2d 1139, 1142 (7th Cir. 1987).

■ In his complaint, Patrick claims that Sheriff Gilliland and Jasper County violated his fourth and fourteenth amendment rights "by unlawfully detaining him without a valid arrest warrant, probable cause or other legal basis." As noted above, the district court found that Patrick had failed to allege sufficient facts to establish that the allegedly unconstitutional detention resulted from the official custom or policy of Jasper County and, based on this finding, concluded that summary judgment was appropriate for both Jasper County and Sheriff Gilliland. We do not agree with the district court's conclusion concerning Gilliland. Although "[s]ummary judgment is proper against a party who fails to establish the existence of an element essential to his case," *Donald*, 836 F.2d at 379, establishing the existence of a municipal policy

10. Section 1983 provides:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

or custom is not an essential element of Patrick's case against Sheriff Gilliland. Rather, establishing an official policy or custom of Jasper County was an essential element in Patrick's case against Jasper County itself. *See, e.g., Erwin v. County of Manitowoc*, 872 F.2d 1292, 1297–99 (7th Cir.1989); *Jones v. City of Chicago*, 856 F.2d 985, 995–96 (7th Cir.1988); *Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir.1988); *Tavarez v. O'Malley*, 826 F.2d 671, 677–78 (7th Cir.1987).

Unfortunately for Patrick, the great majority of his appellate brief is devoted to the question of whether he presented sufficient evidence to establish that his allegedly unconstitutional detention resulted from the policy or custom of Jasper County, which, as previously stated, is inapplicable to the question of whether Sheriff Gilliland is liable to Patrick under section 1983. Patrick's emphasis on the "municipal policy or custom" question, in all probability, resulted from the district court's determination that his failure to establish such policy relieved *both* Jasper County and Sheriff Gilliland of section 1983 liability. This fact, however, is irrelevant. It is Patrick's burden as an appellant to bring to this court's attention the alleged errors in the district court's summary judgment order and cite relevant case law in support of his argument for reversal thereof. *See* Fed.R. App.P. 28(a)(4). Patrick has failed to fulfill this duty on appeal and, as we have stated previously, " '[i]t is not the obligation of this court to research and construct the legal arguments open to the parties, especially when they are represented by counsel.' " *Beard, supra*, 840 F.2d at 408–09 (quoting *Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir.1986), *cert. denied*, 479 U.S.

1056, 107 S.Ct. 933, 93 L.Ed.2d 984 (1987)). Other than his argument concerning the "municipal policy or custom" question, the only argument Patrick presents on appeal is that Sheriff Gilliland, in transferring him to the LaPorte County Jail because of overcrowding, violated Indiana Code § 35–33–11–3 [11] because he failed to obtain court authorization to transfer Patrick and that this failure to comply with the transfer statute "amounts to an unlawful transfer of Patrick, thereby violating Patrick's rights under the Fourth, Fifth and Fourteenth Amendments." However, because it was not presented to the district court, this argument is not properly before us and we therefore refuse to consider it on appeal. *See Boyers v. Texaco Refining and Marketing, Inc.*, 848 F.2d 809, 811 (7th Cir.1988).[12] Thus, Patrick has failed to present us with any properly preserved argument that is relevant to the question of Sheriff Gilliland's liability under section 1983. Consequently, we hold that Patrick has waived his section 1983 claim against Gilliland on appeal and we will address the alleged merits of his unconstitutional detention claim only as they relate to Jasper County.

■ The main thrust of Patrick's complaint against Jasper County is that he was detained an unreasonable length of time without being taken in front of a magistrate for a determination that his warrantless arrest was supported by probable cause and that what he refers to as an extended detention violated his rights under the fourth and fourteenth amendments. It is well settled that the fourth amendment requires a judicial determination of probable cause before an individual arrest-

---

11. Ind.Code § 35–33–11–3 provides:
   "Upon petition by the Sheriff alleging that:
   (1) the local penal facility is overcrowded or otherwise physically inadequate to house inmates; and
   (2) another Sheriff or the Commissioner of the Department of Corrections has agreed to accept custody of inmates from the Sheriff; the court may order inmates transferred to the custody of the person who has agreed to accept custody. Whenever a transfer order is necessary under this section, only inmates serving a sentence after a conviction for a

crime may be transferred, unless the overcrowding or inadequacy of the facility also requires transfers of inmates awaiting trial or sentencing."

12. Moreover, whether Sheriff Gilliland violated Indiana law in transferring Patrick to the LaPorte County Jail is not determinative of whether the transfer was a violation of the Constitution. *See Archie v. City of Racine*, 847 F.2d 1211, 1216–18 (7th Cir.1988) (*en banc*), *cert. denied*, —— U.S. ——, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989).

ed without a warrant may be subjected to an extended restraint of liberty. In *Gerstein v. Pugh*, 420 U.S. 103, 113–14, 95 S.Ct. 854, 862–63, 43 L.Ed.2d 54 (1975), the Supreme Court stated:

> "[A] policemen's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest. Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases significantly. The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships. Even pretrial release may be accompanied by burdensome conditions that affect a significant restraint of liberty. When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty."

In *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1351 (7th Cir.1985), we agreed with the Fourth Circuit's interpretation of *Gerstein* in *Fisher v. Washington Metropolitan Area Transit Authority*, 690 F.2d 1133 (4th Cir.1982), concerning the

constitutional limits on the length of time an individual arrested without a warrant may be detained. As the *Fisher* court stated:

> "From this we must conclude that the Court considers that the reasonableness requirement of the fourth amendment does carry over past arrest to place limits of permissible duration upon this particular period [ ] of detention. The standard of reasonableness can only be that implied in the Court's observation that it is to be 'brief' and, more specifically, that it is to be only that required 'to take the administrative steps incident to arrest.' "

*Id.* at 1140 (footnote and citations omitted). Thus, "[w]hen the 'administrative steps' have been completed, the police must take the suspect before a neutral magistrate to establish probable cause, or they must let him go." *Gramenos v. Jewel Tea Co.*, 797 F.2d 432, 437 (7th Cir.1986), *cert. denied*, 481 U.S. 1028, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987); *Llaguno v. Mingey*, 763 F.2d 1560, 1567–68 (7th Cir.1985) (*en banc*). Neither the Supreme Court nor this court has adopted a "bright-line" test establishing at what point the warrantless detention ceases to be brief. Rather, we have analyzed on a case-by-case basis whether the period of detention is reasonable in light of all the circumstances accompanying the detainee's arrest, including transportation, booking, filing, photographing, fingerprinting, identity verification and criminal record "wanted" checks, as well as the number of individuals to be processed with the detainee in question. *See Lewis v. O'Grady*, 853 F.2d 1366, 1369–70 (7th Cir. 1989); *Moore*, 754 F.2d at 1351–52.[13] How-

---

**13.** In *Dommer v. Hatcher*, 427 F.Supp. 1040, 1046–47 (N.D.Ind.1975), *rev'd in part on other grounds sub nom. Dommer v. Crawford*, 653 F.2d 289 (7th Cir.1981), the court found that under Indiana law an individual arrested without a warrant may not "be detained longer than 24 hours without [being brought before a magistrate], except where a Sunday (or legal holiday) intervenes, in which case no person shall be detained longer than 48 hours." The Indiana courts have considered the question of whether a warrantless detention is unreasonably long primarily in the context of whether the alleged illegal detention merits the exclusion of evidence, e.g., confessions, obtained during the de-

tention. *See Richey v. State*, 426 N.E.2d 389, 393 (Ind.1981) (holding forty to forty-eight-hour detention illegal). *Pawloski v. State*, 269 Ind. 350, 380 N.E.2d 1230, 1234–35 (1978) (assuming without finding that thirty-hour detention was illegal). *Williams v. State*, 264 Ind. 664, 348 N.E.2d 623, 626–27 (1976) (holding sixty-eight-hour detention illegal); *Nacoff v. State*, 256 Ind. 97, 267 N.E.2d 165, 168 (1971) (holding four-and-one-half-day detention illegal); *Blatz v. State*, 175 Ind.App. 26, 369 N.E.2d 1086, 1088–89 (1978) (holding ninety-six-hour detention illegal); *Grimes v. State*, 170 Ind.App. 525, 353 N.E.2d 500, 505–06 (1976) (holding six-day de-

ever, in order to determine whether Jasper County detained Patrick for an unreasonable period of time and, thus, whether Jasper County is liable to Patrick under section 1983, initially we must determine if Jasper County is responsible for Patrick's detention in both Jasper and LaPorte Counties, or merely for Patrick's confinement in the Jasper County Jail.

Patrick claims that Jasper County is responsible for the time he was detained in both Jasper County and LaPorte County (approximately 40 hours) because Jasper County officials made the initial decision to hold him without charges[14] and subsequently transferred him without complying with Indiana's prisoner transfer statute, Indiana Code § 35–33–11–3.[15] In his brief, Patrick states:

"the only reason that Patrick's full period of detention did not occur at the Jasper County Jail was simply that the Jasper County Jail was overcrowded. In transferring Patrick to the LaPorte

County Jail, Jasper County did no more than simply move Patrick to a different facility.... Had there been another facility available in Jasper County in which to incarcerate Patrick, then Jasper County would likely have moved Patrick to that facility. Patrick was transferred to LaPorte County as a means of maintaining control of him for Jasper County until he could be brought back."

We are not persuaded by Patrick's unfounded speculation concerning what might have happened had the Jasper County Jail not been overcrowded. The events surrounding Patrick's detention *as they occurred in this case* dictate our analysis of Patrick's constitutional claim, not some hypothetical situation proposed to bolster Patrick's arguments on appeal. Patrick was detained in Jasper County for only four hours before he was transferred to LaPorte County because of the overcrowding resulting from the sixty to eighty individuals brought to the Jasper County Jail in association with the DEA/ISP "drug

tention illegal). However, as we stated in *Moore*, state law governing the processing of arrestees is "not ... controlling when evaluating the constitutionality of the detention." 754 F.2d at 1351.

**14.** At the time of Patrick's arrest, the following statutes were in effect in Indiana:
Ind.Code § 35–33–7–1, which provides in part: "A person arrested without a warrant for a crime shall be taken promptly before a judicial officer:
(1) In the County in which the arrest is made; or
(2) Of any County believed to have venue over the offence committed;
for his initial hearing in court...."
Ind.Code § 35–33–7–2, which provides:
"(a) At or before the initial hearing of a person arrested without a warrant for a crime, the facts upon which the arrest was made shall be submitted to the judicial officer, ex parte, in a probable cause affidavit. In lieu of the affidavit or in addition to it, the facts may be submitted orally under oath to the judicial officer. If facts upon which the arrest was made are submitted orally, the proceeding shall be recorded by a court reporter, and, upon request of any party in the case or upon order of the court, the record of the proceeding shall be transcribed.
(b) If the judicial officer determines that there is probable cause to believe that any crime was committed and that the arrested

person committed it, the judicial officer shall order that the arrested person be held to answer in the proper court. If the facts submitted do not establish probable cause or if the prosecuting attorney informs the judicial officer on the record that no charge will be filed against the arrested person, the judicial officer shall order that the arrested person be released immediately."
Ind.Code § 36–8–3–11, which provides:
"Whenever an arrest has been made by a police officer, the officer making the arrest shall bring the person arrested before the court having jurisdiction of the offense, to be dealt with according to law. If the arrest is made during the hours when court is not in session, or if the judge is not holding court, the person shall be detained in jail until there is an opportunity for a hearing at the earliest practicable time or until he is released on bail. But a person may not be detained longer than twenty-four [24] hours except when Sunday intervenes, in which case a person may not be detained longer than forty-eight [48] hours."

**15.** As noted above, Patrick has waived the issue of whether his transfer under section 35–33–11–3 was unlawful because he failed to present this issue to the district court. In any event, this allegation is insufficient to allege a violation of the Constitution. *See supra* note 12 and accompanying text.

bust."[16] Once Patrick was transferred to the LaPorte County Jail, he was no longer within the control, at least for detention purposes, of Jasper County policymaking officials—namely, the Jasper County Prosecutor and Sheriff Gilliland.[17] *See Patton v. Przybylski,* 822 F.2d 697, 700 (7th Cir. 1987). Patrick has failed to cite any authority to convince us otherwise. Indeed, he has presented nothing more than bald allegations and speculation in support of his proposition that Jasper County is responsible for the time he was detained in the LaPorte County Jail. As noted above, it is not our duty to research Patrick's arguments in order to discover relevant authority, if any, to support his contentions on appeal. *Beard,* 840 F.2d at 408–09. Moreover, we consider it to be somewhat disingenuous for Patrick to argue on appeal that his "unconstitutional detention occurred solely as the result of a policy established by the concerted efforts of the Jasper County Prosecutor and Sheriff Gilliland" in light of his argument in the dis-

trict court that his detention in LaPorte County resulted from the policy of that county as formulated by LaPorte County Sheriff Jan Rose. Either LaPorte County was responsible for Patrick's detention there or it was not. Patrick is not free to revamp his arguments simply because he has settled his claim with LaPorte County and Sheriff Rose and they are not parties to this appeal. Thus, we conclude that Jasper County is responsible only for the four hours Patrick was detained in the Jasper County Jail and we will analyze Patrick's unconstitutional detention claim accordingly. *See Patton,* 822 F.2d at 700.

Our conclusion that Jasper County is responsible only for the four hours Patrick spent in its jail essentially ends our analysis of Patrick's unconstitutional detention claim. Despite the Jasper County defendants' arguments that they are responsible only for Patrick's four-hour detention in the Jasper County Jail and that this period of time was not unreasonably long, Patrick has failed to argue, both in this court and

---

**16.** We take issue with the dissent's statement that the Jasper County defendants engaged in "abusive conduct by warehousing the prisoner outside the confines of the county...." There is nothing in the record to support what the dissent implies—namely, that Jasper County transferred Patrick to LaPorte County in order to avoid taking him before a magistrate—by the use of the term "warehousing." On the contrary, it is undisputed that Patrick was transferred to the LaPorte County Jail due to the overcrowded conditions in the Jasper County Jail resulting from the number of individuals arrested in the "drug bust" and transferred there for processing. Moreover, as we hold, *infra,* the four-hour period Patrick was detained in the Jasper County Jail was reasonable in light of the number of arrestees (sixty to eighty) that had to be booked (interviewed, fingerprinted, photographed and, possibly, checked through the National Crime Institute computer system) and processed in association with the ISP/DEA "drug bust." Indeed, in light of the detailed booking procedures and necessity of checking for outstanding arrest warrants for *each* arrestee from the "drug bust," taking, in all probability, a minimum of fifteen minutes per person, four hours seems most efficient for three ISP officers to process the sixty to eighty individuals arrested.

It is also beyond dispute that county officials have a duty to maintain their jails to minimize the risks resulting from overcrowding, i.e., conflicts among and injury to those individuals

incarcerated in the jail, lest they violate the prisoners' constitutional rights (and subject themselves to liability under 42 U.S.C. § 1983!). *See, e.g., Carver v. Knox County,* 887 F.2d 1287 (6th Cir.1989); *Union County Jail Inmates v. DiBuono,* 713 F.2d 984 (3d Cir.1983), *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1600, 80 L.Ed.2d 130 (1984).

**17.** We also wish to emphasize that Patrick was arrested by officers of the Indiana State Police, not the Jasper County Sheriff's Department and was detained at the Jasper County Jail and, for that matter, at the LaPorte County Jail under the authority of the Indiana State Police. *See* Ind.Code § 10–1–1–22. As noted above, Patrick sued the Indiana State Police and various ISP officers for his allegedly unconstitutional detention. *See supra* note 4. However, the district court granted summary judgment for the Indiana State Police based on the eleventh amendment which prohibits suits in federal court for monetary damages which would require payment from the state treasury. *See Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). The court also granted summary judgment for the ISP officers due to Patrick's failure to establish their personal involvement in his detention. Patrick has not appealed the district court's resolution of his claims against the Indiana State Police and its officers; thus, we will not address the question of whether they were responsible and, thus, liable for Patrick's detention.

in the district court, that this four-hour detention violated his constitutional rights. Rather, Patrick premises his argument on appeal entirely on his assertion that forty hours (the total amount of time he was detained in Jasper County and LaPorte County) is the relevant time period for determining Jasper County's liability under section 1983. Patrick has done so at his peril.[18] In any case, there is ample evidence in the record that Patrick's four-hour detention is attributable to the processing (booking, fingerprinting and photographing) of the sixty to eighty individuals brought to the Jasper County Jail in connection with the "drug bust."[19] In light of the number of individuals to be processed, we are of the opinion that the four-hour detention was not unreasonably long. *Compare Moore*, 754 F.2d at 1351 ("One could surmise that it took several hours to book the [arrestees] or that the jail was extremely busy that night; however, we are not willing to make these assumptions since there is no evidence in the record warranting any conclusion justifying the four or more hour time period spent by the plaintiffs in the jail.").

Thus, we hold that entry of summary judgment in favor of Jasper County is appropriate because Patrick has failed to set forth sufficient facts and legal precedent establishing a genuine issue of material fact on the question of whether Jasper County detained Patrick in violation of his constitutional rights. Although the district court disposed of Patrick's claim against

Jasper County based on his failure to establish that he was detained according to official county policy, it is well settled that "[i]n appeals from summary judgment, a reviewing court may affirm on any ground that finds support in the record." *Donald v. Polk County, supra*, 836 F.2d at 379.[20]

### III.

Patrick has failed to present this court with an adequate basis for reversing the district court's grant of summary judgment for the Jasper County defendants. By focusing largely on arguments relevant only to the liability of the county, Patrick has waived his claim against Sheriff Gilliland despite the district court's erroneous determination that Gilliland was entitled to summary judgment based on Patrick's failure to establish that Gilliland acted pursuant to the official policy or custom of Jasper County in detaining him. With regard to Jasper County, Patrick's argument that the county is responsible for his detention in both Jasper County and LaPorte County is without merit and Patrick has failed to allege that the four hours he was detained in the Jasper County jail was unreasonable. Thus, to a large degree, Patrick has waived his claim against the Jasper County defendants by failing to argue adequately his case in this court. That is, he has failed to allege sufficient facts and cite relevant judicial authority to support his claim that he was unconstitutionally detained by the Jasper County defendants.[21] Accordingly, the

---

**18.** Even if we agreed with Patrick's contention regarding the length of detention for which Jasper County is responsible, which we do not, he has failed to cite a single case in his brief concerning the standards for assessing the reasonableness of a warrantless detention and, thus, has waived this claim under *Beard, supra,* for failure to adequately argue his case on appeal.

**19.** There is evidence in the record that at least three ISP officers were involved in processing these individuals. Although Sheriff Gilliland and other officers of the Jasper County Sheriff's Department were present during the booking procedures, the record does not reflect whether they assisted the ISP officers in processing the sixty to eighty arrestees.

**20.** In light of our holding that Patrick has failed to establish a constitutional violation, we need not address his contentions regarding whether he presented sufficient evidence to establish an official policy or custom on the part of Jasper County, including his argument that the district court improperly determined that the conversation between Sheriff Gilliland and the Jasper County Prosecutor was hearsay. As we stated in *Mark v. Furay*, 769 F.2d 1266, 1271 (7th Cir.1985): "The question of whether a municipality *caused* a constitutional deprivation does not even arise absent proof that a deprivation in fact occurred." (Emphasis in original).

**21.** It is no doubt apparent that we regard Patrick's arguments on appeal wholly inadequate to reverse the district court's grant of summary judgment in favor of the Jasper County defen-

district court's grant of summary judgment in favor of Sheriff Gilliland and Jasper County is

AFFIRMED.

RIPPLE, Circuit Judge, dissenting.

I would reverse the judgment of the district court with respect to the claims against Jasper County and Sheriff Gilliland.[1]

Indiana county prosecutors and sheriffs—and their county[2]—are not excused from the constitutional and statutory obligation to bring an incarcerated person promptly before a judicial officer simply because that person has been delivered to the county jail by a state police officer. Nor can these parties escape civil liability for such abusive conduct by warehousing the prisoner outside the confines of the county in violation of state law. The fact that the receiving county and its sheriff might also incur liability is irrelevant in determining the liability of those who initiated and have continuing responsibility for the illegality. Accordingly I respectfully dissent.

---

dants. We wish to point out that the Jasper County defendants' performance on appeal was not much better than that of Patrick. It is incredible to us that neither party to this section 1983 action, which is based on Patrick's allegedly unconstitutional detention, has cited a single case in their briefs addressing the limitations the fourth and fourteenth amendments place on the detention of individuals arrested without a warrant.

1. In this court, Sheriff Gilliland was represented by the same counsel as Jasper County and, as my brothers note, little attention was given to the individual liability of the sheriff. However, when read as a whole, the brief certainly sets

forth sufficient argumentation to permit us to adjudicate the Appellant's contention against the sheriff. In my view, the sheriff's role in the illegal transfer of the plaintiff to LaPorte County was also preserved adequately in the district court.

2. The joint decision of the prosecutor and sheriff to hold the plaintiff for a lengthy period can constitute a policy of the county. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 484–85, 106 S.Ct. 1292, 1300–01, 89 L.Ed.2d 452 (1986); *see also Anderson v. Gutschenritter,* 836 F.2d 346, 349 (7th Cir.1988).