993 F.2d 1549
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
In the Matter of Dorothy M. JENKINS, Debtor-Appellant.
 No. 92-2811.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 19, 1993.
Decided May 14, 1993.
 
 1
 Before CUDAHY, and MANION, Circuit Judges, and JAMES F. HOLDERMAN, Jr., District Judge.*
 
 ORDER
 
 2
 When Raymond Jenkins died, the National Bank of Aledo, Illinois (the "Bank") commenced an adversary proceeding in bankruptcy court seeking to collect part of the proceeds of an insurance policy on his life. Raymond and his wife, Dorothy, had assigned the policy to the Bank as collateral for several loans the Bank made to Mr. and Mrs. Jenkins. After dismissing some of the Bank's claims, the bankruptcy court entered judgment for the Bank for $1,595.00 plus interest. Dorothy Jenkins appealed to the district court, which affirmed. She now appeals to this court. The Bank has filed a motion requesting sanctions under Fed.R.App.P. 38. For the reasons we set forth below, we affirm the district court's judgment and deny the Bank's request for sanctions.
 
 I.
 
 3
 In October 1978, Raymond and Dorothy borrowed $28,400 from the Bank to buy a home. The loan was secured by a mortgage on the property (the "mortgage"). Almost two years later, in anticipation of receiving a loan to provide working capital for their business, Raymond and Dorothy assigned to the Bank a life insurance policy on Raymond. The assignment stated that "the Policy is to be held as collateral for any and all liabilities of [Mr. and Mrs. Jenkins], or any of them, to [the Bank], either now existing or that may hereafter arise in the ordinary course of business...." The assignment also stated that the Bank was "under no obligation to pay any premium" on the policy. If the Bank did pay any premiums, "any such amounts so paid ... shall become part of the Liabilities hereby secured...." One month after Raymond and Dorothy executed the assignment, they signed a note for a $41,000 working capital loan (the "second loan"). The note specifically named the life insurance policy assignment as security.
 
 
 4
 In March 1981, Raymond and Dorothy borrowed $7,300 more (the "third loan"). This note did not specifically mention any security. In January 1984, Raymond and Dorothy assigned a different life insurance policy to the Bank, apparently because Raymond had switched insurance companies. The substitute assignment contained the same language as the original assignment, including the language stating that the assignment covered any of Mr. and Mrs. Jenkins' future or existing debts to the Bank.
 
 
 5
 In August 1984, Raymond and Dorothy filed a petition for bankruptcy under Chapter 7 of the Bankruptcy Code. The Bank filed a notice of claim for approximately $57,000. The notice listed part of the debt as secured and part unsecured. During the course of the bankruptcy proceedings, Raymond and Dorothy delivered a quit claim deed conveying their mortgaged home to the Bank. The Bank also received a distribution of approximately $4,900 from the estate after Raymond and Dorothy received a discharge from the bankruptcy court. Despite the deed and the distribution, the Bank still had secured debt owed by Raymond and Dorothy.
 
 
 6
 During and after their bankruptcy, Raymond and Dorothy continued to pay premiums on the life insurance policy. In 1990, Raymond Jenkins died, and the life insurance proceeds ($100,000.00) became available. The Bank demanded payment of its outstanding loans secured by the policy. Dorothy refused, so the Bank commenced this adversary proceeding in bankruptcy court seeking to recover over $7,000--which included an alleged deficiency on the mortgage and balances due on the second and third loans--plus interest. The bankruptcy court, after a bench trial, ruled that the Bank had released the mortgage during the bankruptcy proceedings because the deed Raymond and Dorothy had given the Bank was a deed in lieu of foreclosure under Illinois law. The bankruptcy court found, however, that Dorothy still owed about $1,600 on the second and third loans and that both these loans were secured by the life insurance policy. Thus, the bankruptcy court entered judgment for the Bank for $1,600 plus interest, rejecting Dorothy's defenses of laches and estoppel and her claim that she was entitled to a set-off for the amount of the premiums she and Raymond had paid on the policy since their bankruptcy. The district court affirmed the bankruptcy court's judgment in all respects.
 
 
 7
 Dorothy appeals the district court's decision affirming the bankruptcy court's award to the Bank. The Bank does not appeal the district court's decision affirming the bankruptcy court's decision that the Bank had released the mortgage during Raymond and Dorothy's bankruptcy. The Bank has, however, filed a motion claiming that Dorothy's appeal is frivolous and seeking sanctions under Fed.R.App.P. 38.
 
 II.
 
 8
 Before we reach the merits of these arguments, we must consider whether the district court had jurisdiction over this proceeding and whether the district court's adjunct, the bankruptcy court--a tribunal composed of non-Article III judges--had the authority to enter a final judgment in this case. Neither Dorothy's nor the Bank's briefs mention these questions, despite Circuit Rule 28(b)'s requirement that the parties' jurisdictional statements "contain a concise statement of the basis of the jurisdiction of the trial court," which in this case was the bankruptcy court.
 
 
 9
 28 U.S.C. § 1334(b) vests in the district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11 [Bankruptcy], or arising in or related to cases under title 11." Thus, to determine if a proceeding is properly before the district court pursuant to its bankruptcy jurisdiction, we must determine if the proceeding falls into one of those categories: proceedings "arising under" title 11; proceedings "arising in ... cases under" title 11; or proceedings "related to cases under" title 11.
 
 
 10
 For purposes of this order, it is not necessary to dwell in any great length on the definitions of "arising under," "arising in," or "related to." It is sufficient to say generally that a proceeding falls into either the "arising under" or "arising in" category if "the proceeding involves a right created by the federal bankruptcy law" or "is one that would arise only in a bankruptcy." In re Wood, 825 F.2d 90, 97 (5th Cir.1987); see also In re Wolverine Radio Co., 930 F.2d 1132, 1144 (6th Cir.1991). This generally includes proceedings to determine the effect of prior orders entered by the bankruptcy court. In re Franklin, 802 F.2d 324, 326 (9th Cir.1986). In this circuit, a case is "related to" if "it affects the amount of property available for distribution or the allocation of property among creditors." In re Xonics, 813 F.2d 127, 131 (7th Cir.1987).
 
 
 11
 To determine whether a district court has jurisdiction pursuant to § 1334(b), it makes no difference whether the case is characterized as "arising under," "arising in," or "related to," since "[t]hese references operate conjunctively to define the scope of jurisdiction." In re Wood, 825 F.2d at 93. Characterization is important, however, in determining whether a bankruptcy court has the authority to enter a final judgment in a case. 28 U.S.C. § 157(b)(1) gives bankruptcy judges the authority to hear and enter judgment in "all core proceedings arising under title 11 or arising in a case under title 11...." (Emphasis added.) Note how § 157(b)(1) equates "core proceedings" with proceedings "arising under title 11" and proceedings "arising in a case under title 11." This construction limits the term "core proceedings": only proceedings "arising in" or "arising under" are core proceedings; proceedings "related to cases under title 11" are not core proceedings. In re Wolverine Radio Co., 930 F.2d at 1144; In re Wood, 825 F.2d at 96-97. A bankruptcy judge's power in a non-core proceeding (that is, one that falls into the "related to" category) is limited. Generally, the bankruptcy judge may only hear such a proceeding and submit proposed findings of fact and conclusions of law; only the district court may enter final judgment after de novo review of any proposed findings and conclusions the parties have objected to. 28 U.S.C. § 157(c)(1). A bankruptcy judge may enter judgment in a "related to" proceeding only if the district court properly refers the proceeding "with the consent of all the parties to the proceedings...." 28 U.S.C. § 157(c)(2); see also In re Xonics, 813 F.2d at 132-33.
 
 
 12
 Does this dispute fall into any of the three categories of proceedings for which § 1334(b) vests jurisdiction in the district court? Which category does this proceeding fall into: is this a proceeding "arising in," "arising under," or "related to"? If this proceeding is simply "related to" the prior bankruptcy case, did the bankruptcy judge have the authority to enter final judgment? The record does not reveal any express consent; is implied consent, by failure to object, sufficient? See In re Xonics, 813 F.2d at 132-33 (implying that explicit consent is necessary); cf. Silberstein v. Silberstein, 859 F.2d 40, 41-42 (7th Cir.1988) (a magistrate judge, who like a bankruptcy judge is a non-Article III judicial officer, has authority to enter final judgment under 28 U.S.C. § 636(c) only if the parties expressly and unambiguously consent; court will not infer consent from conduct).
 
 
 13
 The parties' jurisdictional statements fail to address any of these questions. However, we have examined the record and are satisfied this proceeding is properly before us. The Bank's complaint reveals that when the Bank demanded payment, Dorothy refused on the ground that any proceeding to collect would violate the permanent injunction imposed by 11 U.S.C. § 524(a)(3), which provides that a discharge enjoins any action to collect a debt from exempt property acquired after the commencement of the bankruptcy case. The complaint asked for a declaration that the Bank could seek to recover from the insurance proceeds without violating the § 524 injunction. Resolution of this proceeding, therefore, depended on an interpretation of § 524 and the effect of any injunction it might have imposed in this case. Thus, this proceeding fell into one of the two broad categories of core proceedings since it involved a right created by federal bankruptcy law, and the bankruptcy judge had the authority to enter judgment.
 
 III.
 
 14
 We move on to the merits. Dorothy does not in this court argue that any proceeding to collect against her insurance proceeds would violate § 524(a)(3). Instead, she relies on the equitable defenses of laches and estoppel, and on the assertion that she is entitled to set off against the bank's recovery the amount of premium payments she and Raymond paid after their bankruptcy. None of these arguments is persuasive.
 
 
 15
 Dorothy's laches argument meanders somewhat. In the district court, Dorothy argued that laches should apply because the bank waited six and one-half years to attempt to assert any claim based on the life insurance assignment. As the district court rightly noted, the answer to that contention is that the Bank could not collect from the life insurance proceeds until Raymond died. Therefore, the Bank's "delay" was understandable, even necessary; "[u]ntil the policy matured, there was nothing for the Bank to do." D.Ct.Opinion at 7.
 
 
 16
 In this court, Dorothy raises a different laches argument. She claims that the Bank should be barred from recovery because it allowed her and Raymond to pay the life insurance premiums rather than making the payments itself. This argument seems to be based on the premise that if the Bank wanted to maintain its interest in the policy, it had the duty to pay the policy proceeds. This argument fails for at least two reasons. First, Dorothy did not make this argument in the district court; therefore, she has waived it. Patrick v. Jasper County, 901 F.2d 561, 566 (7th Cir.1990). Second, Dorothy never identifies the source of the Bank's alleged duty to pay premiums. That duty certainly does not arise from the assignment; as we have noted, the assignment expressly stated that the Bank was under no duty to pay any premiums and could recover from Raymond and Dorothy any premium payments it did make. Dorothy seems to argue that her and Raymond's bankruptcy imposed a duty to pay premiums on the Bank, but she cites no authority for this proposition and does not explain why the bankruptcy would affect the Bank's contractual duties.
 
 
 17
 Dorothy's set-off argument fares no better. Dorothy claims that the Bank was unjustly enriched by the amount of premiums she and Raymond paid because it was the Bank's duty to pay those premiums if it wanted to maintain its collateral. But this argument flounders for the same reason the laches argument did: Dorothy never identifies the source of the Bank's alleged duty to pay premiums, a duty at odds with the assignment's express language.
 
 
 18
 Finally, Dorothy argues that the Bank is estopped from collecting on the insurance proceeds. This is so, Dorothy says, because the Bank accepted a deed in lieu of foreclosure in satisfaction of all of her and Raymond's real estate debts and because the Bank had represented to them that the other debts were unsecured. Two of the elements of estoppel are a misrepresentation of a material fact and good faith reliance upon the misrepresentation by the party claiming estoppel. Vaughn v. Speaker, 533 N.E.2d 885, 890 (Ill.1988). The bankruptcy court found that the Bank had made no misrepresentation that Raymond and Dorothy had relied upon. That finding is not clearly erroneous. Dorothy points to no evidence in the record, and we can find none, as to why Raymond and she continued to pay the premiums. For all we know, they might have kept paying the premiums because they could not obtain insurance from another source. (There is no evidence in the record regarding Raymond's insurability.) Or they might have kept paying the premiums because the insurance assignment's unambiguous language required them to. Or, they might have recognized that the Bank's claim represented only a fraction of the policy's face value and that it made economic sense to keep the policy in force. This is conjecture, but no more so than would have been any finding by the bankruptcy court that Raymond and Dorothy had relied on any misrepresentation by the Bank. It was not clear error for the court, in the absence of any evidence, to refuse to speculate to fill in the gaps in Dorothy's case.
 
 
 19
 As noted earlier, the Bank has requested that we award sanctions under Fed.R.App.P. 38. According to the Bank, Dorothy's appeal is frivolous. We need not decide that question, though, because even in a frivolous appeal an award of sanctions is discretionary. See City of East St. Louis v. Circuit Court for the Twentieth Judicial Circuit, 986 F.2d 1142, 1145 (7th Cir.1993). There is no evidence of bad faith on Dorothy's part. Perhaps more importantly, the Bank completely failed in its obligation to set forth the basis for the bankruptcy court's jurisdiction and did not bother to discuss in its brief Dorothy's estoppel argument. For those reasons, we decline to award sanctions to the Bank.
 
 
 20
 For the reasons set forth, the district court's judgment is
 
 
 21
 AFFIRMED.
 
 
 
 *
 Hon. James F. Holderman, Jr., District Judge for the Northern District of Illinois, is sitting by designation