(No. 48118.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. GUS MORDICAN, Appellee.

*Opinion filed October 1, 1976.*

William J. Scott, Attorney General, of Springfield, and
Bernard Carey, State's Attorney, of Chicago (James B.

Zagel and Jayne A. Carr, Assistant Attorneys General, of Chicago, and Laurence J. Bolon, Linda Ann Miller, and Larry L. Thompson, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (James N. Gramenos, Assistant Public Defender, of counsel), for appellee.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

After a jury trial, the defendant, Gus Mordican, was convicted in the circuit court of Cook County of unlawful use of a weapon because he had in his possession a sawed-off shotgun (Ill. Rev. Stat. 1969, ch. 38, par. 24—1(a)(7)). He was sentenced to serve a term of two to five years in the penitentiary. He was then on probation as the result of conviction for an earlier, unrelated offense. Because of the present conviction, his probation was revoked, and for the earlier offense he was sentenced to serve a term of one to two years, to run consecutively to the sentence for the present offense. The defendant appealed from both judgments, and the appeals were consolidated. The Appellate Court, First District, reversed the judgment of conviction and the probation revocation, and remanded for a new trial. (33 Ill. App. 3d 196.) We allowed the State's petition for leave to appeal.

The principal issue arises out of the admission into evidence of a shotgun that police officers found on December 29, 1970, when they entered an apartment occupied by the defendant. The defendant contends that since the officers had neither a search warrant nor a warrant for his arrest, the search for and the seizure of the gun were unlawful, and the weapon as well as testimony concerning it should have been excluded. The trial court rejected that contention.

An understanding of the case requires a statement of

certain antecedent events. In addition to his indictment for the unlawful use of weapons, the defendant had been separately indicted for an armed robbery committed on December 21, 1970. The State elected to go to trial on that charge first, and a jury trial resulted in an acquittal. That trial was presided over by the same judge who presided over the present jury trial upon the charge of unlawful use of weapons. The same attorney represented the defendant at both trials. The reasonableness of the December 29 search had also been challenged during the armed robbery trial, and the trial judge had determined that issue adversely to the defendant.

When the defendant during the present trial sought to exclude testimony concerning the discovery of the shotgun, the assistant State's Attorney pointed out that there had been no motion to suppress. The following then occurred, out of the presence of the jury:

> "THE COURT: However, I did hear the other case and based upon the evidence which I heard in the other case, I feel that the police department in this particular case did have sufficient grounds to go into the apartment.
>
> MR. BERGER [counsel for the defendant] : They had no warrant.
>
> THE COURT: And probable cause at the time for the arrest of Gus Mordican for armed robbery for which he was charged, tried and he was acquitted. And they did have probable cause to enter that apartment to search for him to make the arrest. And it's in the preparation or part of making the arrest that they turned over the bed and so forth which was going into [sic] the other case and that's why the motion to suppress was not filed as far as this case is concerned because we did hear the evidence in the other case.
>
> I just don't want to have the record show that I am stopping you from filing a motion to suppress at this time. That evidence was heard by me in the other case as part of a jury trial."

We agree with the conclusion of the appellate court that in these circumstances the defendant's failure to file a formal

motion to suppress did not constitute a waiver of his objection to the legality of the search.

The State's basic position is that the defendant was barred by the doctrine of collateral estoppel from challenging the validity of the search a second time. For this contention it relies on our decision in *People v. Hopkins* (1972), 52 Ill. 2d 1. In that case the defendant, who was charged with robbery and attempted rape, moved to suppress a knife which had been found on his person at the time of his arrest, on the ground that the arrest had been illegal. After a hearing, the motion was denied, and the ensuing trial resulted in a conviction. In the defendant's subsequent trial upon another, unrelated charge of attempted rape, he again moved to suppress the knife on the same ground. The motion was denied, this time without a hearing, and the defendant was again convicted. We affirmed, holding that the defendant was not entitled to repeated hearings on the same underlying issue of the legality of the search and seizure. The doctrine of collateral estoppel was also applied in *People v. Armstrong* (1973), 56 Ill. 2d 159, 161, in similar circumstances. We held there that if a motion to suppress had been denied in a trial on one charge, the defendant then having been convicted, he could not relitigate the validity of the search and seizure in a subsequent trial on a different charge, in the absence of additional evidence or the "peculiar circumstances" noted in *People v. Hopkins.*

What distinguishes the case at hand from *Hopkins, Armstrong* and other cases is the "peculiar circumstance" that here, because of his acquital, the defendant had no opportunity to obtain a review of the correctness of the ruling made in his earlier trial as to the validity of the search. In *People v. Hopkins* we discussed both the general rule relied upon by the State, and the qualification of that rule which governs this case, saying:

"*** The fact that the same item of evidence may be relevant in several trials involving a

defendant does not, without more, entitle him to repeated hearings as to the validity of the arrest and search which produced the item.

The extent to which the doctrine of collateral estoppel may be used against a defendant in a criminal case is, of course, severely limited, as pointed out by Chief Justice Burger in his dissent in *Ashe v. Swenson* (1970), 397 U.S. 436, 465, 25 L. Ed. 2d 469, 90 S. Ct. 1189. (See also, *Connelly v. Director of Public Prosecutions,* 1964 A.C. 1254; 58 Cal. L. Rev. 391, 394.) The notion of mutuality, which so largely characterizes the use of the doctrine in civil cases, cannot be given full play in criminal cases. Moreover, a defendant, unlike the prosecution, is not allowed an immediate appeal from an adverse ruling upon a motion to suppress. He cannot review that ruling until after he has been convicted and sentenced. And for a variety of reasons he might not wish to appeal, or as in the case of an acquittal at the first trial, he might not be able to do so. But there has been no suggestion in this case that any of these situations existed, or that any evidence in addition to that submitted upon the first hearing had become available for submission in connection with the motion to suppress in the present case. Although the issue is a close one, we hold that the constitutional rights of the defendant were not violated by the refusal of the trial judge to conduct a hearing on the motion to suppress the physical evidence." (52 Ill. 2d at 3-4.)

The consequence of the State's position would be to insulate from review a trial court ruling admitting evidence without which, in many cases, the trial might end in acquittal. We hold, therefore, that the appellate court correctly interpreted and applied our decision in *People v. Hopkins.*

Alternatively, the State argues that the burden should be placed upon the defendant to obtain a transcript of the proceedings at the hearing upon the first motion to suppress, and to see that it is incorporated in the record of the second trial. But in our opinion that burden, in a case in which the defendant was acquitted, appropriately rests upon the State rather than the defendant.

The appellate court also found that reversible error had occurred because of prejudicial references made by the prosecutor to the charge of armed robbery which had been brought against the defendant. In his opening statement to the jury, the prosecutor stated:

> "The State will prove that on the 29th of December, 1970, in the morning, police officers went to the home of Gus Mordican. The State will further prove that they went there for an investigation concerning Gus Mordican. They went there to arrest him. *** They told him he was under arrest for investigation of an armed robbery, advised him of his rights. Mordican made an admission that he owned a shotgun. The police took him into custody.
>
> Don't concern yourselves with the armed robbery. He's not on trial for that. You are only to concern yourselves with the fact that he is being charged with possession of a sawed-off shotgun."

The prosecutor did not tell the jury that the defendant had in fact been found not guilty of the charge of armed robbery.

No objection was made to the statement. But when counsel for the defendant, in his own opening statement, sought to supply the omission, the prosecutor objected and the objection was sustained by the court. Reference to the charge of armed robbery was again brought out by the State in its examination of one of the police officers who had gone to the defendant's apartment.

The opening statement by the State, coupled with its subsequent objection when defense counsel sought to advise the jury of the acquittal, was plainly prejudicial to the defendant, and the appellate court was correct in

reversing and remanding the cause for a new trial. *People v. Donaldson* (1956), 8 Ill. 2d 510.

The judgment of the appellate court is affirmed.

*Judgment affirmed.*