**Simon ARNOLD, Plaintiff,**

v.

**CITY OF CHICAGO, Patrol Officer A. Fuller, Patrol Officer E. Guest, Detective Leracy, Detective Grinning, Richard M. Daley, A.S.A. Gerber, and A.S.A. John Roe, Defendants.**

No. 88 C 6423.

United States District Court, N.D. Illinois, E.D.

Oct. 3, 1991.

Simon Arnold, Jr., pro se.

Martha R. Barglow, Asst. Corp. Counsel, Judson H. Miner, Corp. Counsel, City of Chicago, Dept. of Law, for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge.

Simon Arnold is serving a ten-year sentence as a result of his 1987 conviction for armed robbery, armed violence, and unlawful restraint. *See People v. Arnold,* 218 Ill.App.3d 647, 160 Ill.Dec. 784, 577 N.E.2d 1355 (1991). Arnold brings this action seeking damages and declaratory relief under 42 U.S.C. § 1983 for his arrest and initial detention. On January 19, 1989, the court dismissed all defendants except the City of Chicago ("City") and City police officers Anise Fuller, Eileen Guest, Robert Grinning, and Edmund Leracz. Arnold has filed a motion for summary judgment to which the remaining defendants responded with a summary judgment motion of their own. For the reasons that follow, the court grants summary judgment in favor of defendants.

Arnold's amended complaint contains two counts against the City and the individual police officers. In Count I, Arnold charges police officers Fuller, Guest, and Grinning with false arrest and malicious prosecution. Count II asserts that the City and defendant Leracz violated Arnold's right under the Fourth and Fourteenth Amendments to a prompt judicial determination of probable cause following his warrantless arrest.[1]

Because the court grants summary judgment to defendants, it must read the record in the light most favorable to Arnold. *See Stokes v. City of Madison,* 930 F.2d 1163, 1168 (7th Cir.1991). Arnold's case begins with his November 22, 1985 arrest for possession of a stolen vehicle. According to Arnold, he and a friend left a house where they were visiting to go to a liquor store at around 1:00 a.m. When he and his friend came out of the house they saw a police car sitting in the middle of the street. Officers Fuller and Guest called him and his friend over and took them into custody for possession of a stolen vehicle that was parked in the street with its motor running.[2] Following the arrest, the officers took Arnold to the police station.

At the police station, Fuller and Guest placed Arnold in an interview room and questioned him about the stolen auto. Fuller then contacted the state's attorney in charge of felony review and received approval to charge Arnold with possession of a stolen motor vehicle. Guest in the meantime wrote out a traffic ticket charging Arnold with leaving a motor vehicle unattended with its motor running. According to Arnold, Fuller left the interview room to check on the search of the recovered vehicle. When she returned, she had a roll of quarters and a pack of city vehicle stickers that she had found in the squad car.[3] Fuller ran a computer check on the numbers on the city stickers and discovered that they had been stolen during an armed robbery of a currency exchange a week earlier. At 2:20 a.m., Fuller called detective Leracz who, after being advised of the situation, obtained and reviewed the file on the armed robbery investigation. Leracz proceeded to the station where he observed

---

1. Unlike defendants, the court does not read the amended complaint to allege that Arnold's extended detention violated his right to procedural due process. In any event, the availability of state remedies defeats any such due process claim for extended detention. *See Hood v. City of Chicago,* 927 F.2d 312, 314 (7th Cir.1991).

2. The officers' account of the arrest differs markedly from Arnold's version. The officers stated they stopped to investigate an unattended vehicle they found with its motor running. They conducted a radio check to ascertain whether the vehicle had been reported as stolen. As they were waiting for a response to their

radio check, Arnold came out of the house and shut off the car's motor. Officer Guest issued a traffic citation to Arnold for leaving the running car unattended. The officers then drove up the block and waited further for a response to their radio check. When the record check showed that the car was stolen, they returned to the car where they found Arnold sitting in the driver's seat. The officers then arrested Arnold.

3. Defendants aver that the city stickers were discovered at Arnold's feet on the floor of the interview room. For purposes of this opinion, we accept Arnold's version of the facts as true.

that Arnold generally fit the physical description of the man involved in the armed robbery of the currency exchange. He noted, however, that Arnold was taller than the man the victims described.[4]

At 3:15 a.m., Leracz telephoned the victims of the armed robbery to arrange a lineup. Because all the victims could not attend until the following evening, Leracz scheduled the lineup for 8:00 p.m. After his conversation with the victims, he signed Arnold out of the lock-up, took his picture, and questioned him about his involvement in the armed robbery. At about 4:00 a.m., Leracz asked the watch commander for permission to hold Arnold past court call in order to conduct the lineup. A General Order of the Chicago Police Department in effect at the time of Arnold's detention permitted a watch commander to authorize holding a detainee past court call to continue an investigation. Leracz received permission to hold Arnold past the morning court call.

At the lineup conducted the next day, each of the three victims in the armed robbery of the currency exchange identified Arnold as the offender. Arnold was returned to the lock-up where he remained until the next morning when he was taken before a judge who found probable cause on both the possession of stolen vehicle and the armed robbery charges. Arnold spent thirty-four hours in custody between the time of his arrest and his first appearance before a judicial officer.

On November 27, 1985, Arnold was indicted for armed robbery, aggravated kidnapping, unlawful restraint, and armed violence in connection with the robbery of the currency exchange. In the course of his trial, Arnold moved to quash his arrest and suppress evidence. After conducting a hearing, the trial court concluded that Guest and Fuller had probable cause at the time they arrested Arnold for possession of a stolen vehicle and denied the motion.

Both the traffic citation and the stolen vehicle charges were dropped.

■ Count I of the amended complaint alleges false arrest and malicious prosecution. Arnold maintains that Fuller and Guest arrested him without probable cause, that Fuller, with the aid of Grinning, filed a "false malicious criminal complaint" charging him with possession of a stolen vehicle, and that Guest falsely cited him for leaving a vehicle unattended with its motor running. Defendants assert that the doctrine of collateral estoppel bars Arnold from litigating his false arrest and malicious prosecution claims because the state court already determined in the suppression hearing that the police had probable cause to arrest Arnold.

It is well-settled that issues decided in state criminal proceedings may estop subsequent litigation for violations of civil rights under § 1983. *Allen v. McCurry*, 449 U.S. 90, 104, 101 S.Ct. 411, 420, 66 L.Ed.2d 308 (1980); *see Appley v. West*, 832 F.2d 1021, 1025–26 (7th Cir.1987). Under the full faith and credit statute, 28 U.S.C. § 1738, a federal court generally must afford a state court determination the same preclusive effect that it would receive in the state's own courts. *See Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985); *Bailey v. Andrews*, 811 F.2d 366, 369 (7th Cir.1987). Federal courts look first to the law of the state to "promote the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Allen*, 449 U.S. at 96, 101 S.Ct. at 415. Because state law applies, the court must examine Illinois law and determine what preclusive effect its courts would give to a finding of probable cause in a pretrial suppression hearing.

The standards for invoking collateral estoppel in Illinois are set forth in *Farmer v.*

---

**4.** Leracz also attests by affidavit that Arnold's appearance was similar to a composite drawing made from descriptions the victims gave to police. A copy of the composite is submitted as evidence. Arnold, however, claims that the composite submitted by defendants is not the correct one and submits another showing a man with a thicker mustache. Given the dispute, the court will disregard Leracz' testimony with respect to the composite drawing. As will be made clear, however, the dispute is not material.

*Lane,* 864 F.2d 473, 477 (7th Cir.1988) (citations omitted):

> In general, collateral estoppel precludes the relitigation of issues in a subsequent proceeding when (1) the party against whom the estoppel is asserted was a party to the prior adjudication, (2) the issues which form the basis of the estoppel were actually litigated and decided on the merits in the prior suit, (3) the resolution of the particular issues was necessary to the court's judgment, and (4) those issues are identical to issues raised in the subsequent suit.

Any question as to whether these general principles would apply to the facts of this case were answered in *Stevenson v. City of Chicago,* 638 F.Supp. 136 (N.D.Ill.1986). After a thorough canvas of Illinois law, *Stevenson* determined that "Illinois courts would, if faced with the question, allow defensive use of collateral estoppel to preclude, if appropriate, relitigation of Fourth Amendment issues determined by an earlier pretrial suppression hearing in a criminal case." *Id.* at 141; *see also Willis v. Bell,* 687 F.Supp. 380, 386 (N.D.Ill.1988). This court agrees. Arnold had a full and fair opportunity to litigate the legality of his arrest at his pretrial suppression hearing. Having lost once on the issue, he cannot again seek to relitigate his claim in the guise of a § 1983 damage action against the officers who arrested him.

The doctrine of collateral estoppel in Illinois is subject to some limitations. Tracking the traditional "full and fair opportunity to litigate" limitation on use of collateral estoppel, Illinois recognizes two exceptions to the general rule of preclusion. An issue may not be given preclusive effect in the peculiar circumstance where there is no opportunity for appellate review or when additional evidence has surfaced since the time the issue was first decided. *See Stevenson,* 638 F.Supp. at 139–40. Citing these limitations, Arnold argues he was not given a fair opportunity to contest the validity of his arrest because certain exculpatory evidence was not introduced at the suppression hearing and because his counsel was incompetent. These arguments are specious.

Arnold makes much of the fact that by the time of the suppression hearing the state had abandoned pursuit of the stolen vehicle charge and the traffic citation. He maintains that this evidence would have vitiated the court's finding of probable cause if it had been introduced at the suppression hearing. Arnold contends his attorney was ineffective in failing to bring this fact to the court's attention. The state's failure to pursue the other claims against Arnold, however, is wholly irrelevant to whether the police had probable cause to effect his arrest for possession of a stolen vehicle. Although Arnold's encounter with the police arose out of his arrest on the stolen vehicle charge, evidence of his involvement in more serious crimes surfaced shortly after his arrest. The state eventually elected to pursue prosecution of the more serious armed robbery charges. The decision not to prosecute Arnold on the stolen vehicle charges is neither exculpatory nor a peculiar circumstance. Prosecutors, as a rational means of allocating limited resources, frequently decide to drop lesser charges when they have stronger evidence that a defendant committed more serious crimes. Because the decision to drop the other charges was irrelevant to the lawfulness of Arnold's initial arrest, counsel's failure to raise the fact at the suppression hearing is not evidence of incompetence. Indeed, transcripts of the hearing show that Arnold's counsel represented him well.

That the suppression hearing was held in the course of the proceedings on the charges relative to the robbery of the currency exchange does not prevent defendants from asserting an estoppel defense. Arnold was arrested initially for possession of a stolen vehicle. Thus, admissibility of the evidence connecting him to the currency exchange robbery hinged on the lawfulness of his initial arrest. After a full hearing on the suppression motion, the court determined that probable cause existed for the initial arrest. Because it is the validity of that arrest that is also at issue here, the state court's finding of probable cause for Arnold's arrest for possession of a stolen

vehicle estops him from relitigating the claim alleged in this case.

A finding of probable cause for arrest is an absolute bar to a § 1983 claim for unlawful arrest or malicious prosecution. *Fernandez v. Perez*, 937 F.2d 368, 371 (7th Cir.1991); *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir.1989). The denial of Arnold's motion to quash his arrest and suppress evidence thus also estops his malicious prosecution claims against defendants Guest, Fuller, and Grinning.[5] Accordingly, the court grants summary judgment to defendants on Count I of the amended complaint.

Count II of Arnold's amended complaint contests his extended detention without a prompt determination of probable cause by a judicial officer. Because a finding of probable cause for arrest does not estop an extended detention claim, *Webster v. Gibson*, 913 F.2d 510, 513 n. 7 (8th Cir.1990), the court must consider the substantive merits of Count II.

In *Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1970), the Supreme Court recognized that the Fourth Amendment requires a judicial determination of probable cause as a precondition for any prolonged detention of a suspect arrested without a warrant. The precise contours of *Gerstein*, however, were purposefully left somewhat vague in order to encourage experimentation among the states in implementing procedures for testing probable cause for detention. *Id.* at 123–24, 95 S.Ct. at 868. While the court noted that probable cause for arrest was sufficient to permit an officer to subject the arrestee to "a brief period of detention to take the administrative steps incident to arrest," *id.* at 114, 95 S.Ct. at 863, it prescribed no specific time framework. *Schall v. Martin*, 467 U.S. 253, 275, 104 S.Ct. 2403, 2415, 81 L.Ed.2d 207 (1984). In the aftermath of *Gerstein*, lower courts

reached somewhat conflicting opinions both as to what constituted a "brief period of detention" and as to what constituted a permissible "administrative step incident to arrest." *Compare, e.g., Williams v. Ward*, 845 F.2d 374, 387 (2d Cir.1988), *cert. denied*, 488 U.S. 1020, 109 S.Ct. 818, 102 L.Ed.2d 807 (1989) (finding procedure that sanctioned seventy-two hour delay between arrest and judicial determination of probable cause permissible under *Gerstein* ) *with Bernard v. Palo Alto*, 699 F.2d 1023 (9th Cir.1983) (upholding injunction requiring judicial determination of probable cause within twenty-four hours of warrantless arrest). In this circuit, claims challenging the length of detention under *Gerstein* were judged under the reasonableness standard of the Fourth Amendment.

Neither the Supreme Court nor this court has adopted a 'bright-line' test establishing at what point the warrantless detention ceases to be brief. Rather, we have analyzed on a case-by-case basis whether the period of detention is reasonable in light of all the circumstances accompanying the detainee's arrest, including transportation, booking, filing, photographing, fingerprinting, identity verification and criminal record 'wanted' checks, as well as the number of individuals to be processed with the detainee in question.

*Patrick v. Jasper County*, 901 F.2d 561, 567 (7th Cir.1990).

Noting a need to articulate clearer boundaries as to what was permissible under *Gerstein*, the Supreme Court in *County of Riverside v. McLaughlin*, —— U.S. ——, 111 S.Ct. 1661, 1670, 114 L.Ed.2d 49 (1991) essentially ratified the general approach outlined in *Patrick*. *McLaughlin* not only adopted the reasonableness standard, but also provided a specific time period to guide the courts in determining whether the length of a particular detention was reasonable under the Fourth

---

**5.** Arnold also appears to assert a malicious prosecution claim based on the police officers' failure to pursue the traffic citation they issued to him for leaving a car unattended with its motor running. Although the finding of probable cause for his arrest does not preclude him from litigating this claim, it is nonetheless without

merit. Arnold suffered no injury from the mere issuance of the traffic citation. His simple claim of malicious prosecution therefore has no constitutional significance. *See Easter House v. Felder*, 910 F.2d 1387, 1407 (7th Cir.1990) (en banc), *cert. denied*, —— U.S. ——, 111 S.Ct. 783, 112 L.Ed.2d 846 (1991).

Amendment. The court created a presumption that a person held without a judicial determination of probable cause for less than forty-eight hours was reasonably detained. That presumption, however, is clearly rebuttable.

> [A hearing provided within 48 hours] may nonetheless violate *Gerstein* if the arrested individual can prove that his or her probable cause determination was delayed unreasonably. Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake. In evaluating whether the delay in a particular case is unreasonable, however, courts must allow a substantial degree of flexibility.

*Id.* 111 S.Ct. at 1670.

Arnold does not claim that police delayed his appearance for a judicial determination of probable cause for one of the impermissible reasons cited in *McLaughlin.* He instead argues that they held him past court call so that they could conduct a fishing expedition in order to build a case against him. He contends that such a practice is constitutionally objectionable under such cases as *Llaguno v. Mingey,* 763 F.2d 1560 (7th Cir.1985) (en banc) and *Willis v. Bell,* 726 F.Supp. 1118 (N.D.Ill.1989). The value of those cases as precedent could be questioned after *McLaughlin* since they each involved detentions of less than forty-eight hours. But the court may still safely assume that the delays analyzed in those cases were unreasonable under the Fourth Amendment even after *McLaughlin* because the facts in this case are readily distinguishable.

In *Llaguno,* the plaintiff alleged that police violated his Fourth Amendment rights by holding him for forty-two hours without charges. From the account of the circumstances surrounding the detention set out in the panel opinion, 739 F.2d 1186, 1196 (7th Cir.1984), it appears police continued to hold Llaguno in detention for an extended period even after the prosecutor informed them that he would not approve charges against Llaguno. The only reason police gave for the detention was that Llaguno was a central figure in an ongoing investigation.

■ In contrast, the prosecutor here approved the filing of felony charges against Arnold shortly after his initial arrest. Moreover, police did not continue to hold Arnold in the mere hope that some evidence would surface to tie him to a crime. They already had evidence to tie him to both the stolen vehicle charge and the armed robbery of the currency exchange. They held Arnold specifically for the purpose of conducting a lineup to allow the victims of the armed robbery to verify Leracz' identification of Arnold from the descriptions of the robber included in the investigation file. At least one court has held that holding a lineup is a permissible administrative step incident to arrest. *Sanders v. City of Houston,* 543 F.Supp. 694, 700–01 (S.D.Tex.1982), *aff'd mem.,* 741 F.2d 1379 (5th Cir.1984). This circuit has noted its approval of *Sanders* by including "identity verification" as one of the procedures the court must consider in determining if a particular detention is reasonable. *Patrick,* 901 F.2d at 567. Delaying a judicial determination of probable cause for a brief time after arrest in order to arrange for a witness to the crime to view the defendant for identification purposes is reasonable under the Fourth Amendment.

Although somewhat more similar to this case, the facts of the detention in *Willis* still materially differ from those here. Following his arrest on charges of sexual assault, Willis was placed in a series of lineups. .After the lineups were completed, the state's attorney approved charges against Willis. Nonetheless, invoking the City's general policy, police decided to hold Willis past the first available court call. They held Willis for an extra day so that they could conduct a second set of lineups at a different police station. Police had no good reason to conduct additional lineups other than their hope to connect Willis to other unresolved criminal sexual assaults. The lineups thus were indeed fishing expeditions. Here, however, police had a specific crime they were investigating with specific

evidence linking Arnold to it. Moreover, something more than the vague prospect of discovering Arnold's involvement in other crimes motivated the decision to hold Arnold past court call. Arnold had to be held for an additional day because the victims of the armed robbery were not immediately available to view the lineup. In short, the improper purpose behind the delay that the court found to be offensive in *Willis* is not present in this case.

Even when read in the light most favorable to Arnold, the evidence in the record before the court cannot be read to show that police extended Arnold's detention to conduct a fishing expedition. Nor is there any suggestion that police used Arnold's initial arrest as a pretext for investigating other more serious crimes. Arnold was not arrested for a misdemeanor, but for a serious felony. The police had probable cause to effect his arrest for possession of a stolen vehicle. In the course of processing Arnold on the stolen vehicle charges, police discovered further evidence linking Arnold to another crime. Police promptly reviewed their investigative files to determine whether Arnold was a viable suspect. Although the evidence strongly implicated Arnold, police still had some doubts as to whether he was the man described in the police reports. To assuage their doubts, they immediately arranged for a lineup at the earliest time convenient for the victims. After the victims positively identified Arnold as the robber, charges were prepared and Arnold was sent to court for a judicial determination of probable cause on both the stolen vehicle and the armed robbery charges.

Arnold objects because police could have given him a probable cause hearing on the stolen vehicle charges twenty-four hours earlier. *McLaughlin*, however, allows police considerable flexibility in arranging for a judicial determination of probable cause within the first forty-eight hours of a warrantless arrest. Arnold received his probable cause hearing within the forty-eight

hour guideline set by *McLaughlin*. Although police could have given Arnold separate probable cause hearings on each of the two charges, to combine them into one hearing surely is more efficient. As explained above, police had other valid reasons for extending Arnold's detention beyond the time he first could have appeared before a judge. Thus, when viewed in light of all the circumstances, the court concludes that the detention of Arnold for thirty-four hours without a judicial determination of probable cause was reasonable under the Fourth Amendment. Accordingly, the court grants summary judgment for Leracz and the City on Count II of the amended complaint.[6]

In conclusion, finding no dispute as to a material issue of fact and that defendants are entitled to judgment as a matter of law, the court grants defendants' motion for summary judgment. Plaintiff's motion for summary judgment is denied. With plaintiff entitled to no relief on his complaint, the clerk shall enter judgment dismissing this case in its entirety. It is so ordered.

---

**6.** Having determined that Arnold's detention did not violate the Fourth Amendment under *Gerstein* and *McLaughlin*, the court has no occasion to consider the constitutionality of the City's

General Order authorizing police to hold arrestees past court call. *See Patrick*, 901 F.2d at 570 n. 20.