Ronald Gene THOMPSON, Plaintiff,

v.

Mark C. MUELLER, Michael Turman, and The Village of Hoffman Estates, an Illinois municipal corporation, Defendants.

No. 96. C 4421.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 10, 1997.

James Michael Chesloe, Willow Springs, IL, David E. Maki, Willow Springs, IL, Vincent James Krocka, Chicago, IL, for Plaintiff.

James Gus Sotos, Sally Wiggins, James Constantine Vlahakis, Michael D. Bersani, Hervas, Sotos, & Condon, P.C., Itasca, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

This matter is before the court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Motion granted.

### I. BACKGROUND

In the late evening hours of July 20, 1995, plaintiff Ronald Thompson—a police officer who was not on duty at the time—and his friend Brian Knight visited the Barrington Square Theater in Hoffman Estates, Illinois. Thompson and Knight were conversing in the parking lot near Thompson's car. Ronald Joseph, a theater employee and acquaintance of Thompson, joined in the conversation.

Defendants Mark Mueller and Michael Turman are police officers. In the late evening hours of July 20, 1995, they were patrolling the parking lot of the Barrington Square Theater in an unmarked car. The officers observed Joseph, the theater employee, running to Thompson and Knight. They decided to investigate. They stopped their vehicle approximately 60 feet from where Thompson, Knight, and Joseph were conversing.

Upon seeing the officers staring at him, Thompson—not realizing that they were police officers—shouted: "What the fuck are you looking at?" The officers exited their vehicle. As the officers exited, Joseph, trying to avoid an altercation, walked toward the officers' vehicle apologizing for Thompson's behavior. Officer Turman identified himself to Joseph as a police officer.

Knight moved toward the officers and an altercation ensued between Knight and Turman. Officer Mueller, coming to the aid of his partner, joined the altercation. Thompson, coming to the aid of his friend, attempted to remove Mueller from the fight. Indeed, he grabbed Mueller with enough force to pull him from the altercation.

Thompson was subsequently arrested—he spent the night in jail at the Hoffman Estates Police Department.[1] He was charged with aggravated battery and resisting arrest.

As part of Thompson's defense against the charges, he filed a motion to quash the arrest claiming that the officers lacked probable cause. A two-day hearing was held before a Cook County circuit judge. Extensive testimony was heard from numerous individuals, including everyone involved in the altercation. Additionally, two memoranda of law were filed by Thompson supporting his position that the officers lacked probable cause to arrest Thompson.

The judge ultimately concluded that "reasonable grounds," i.e., probable cause, existed for the arrest of Thompson; thus, the motion to quash the arrest was denied.

The following month, a bench trial was held before the same judge. The judge concluded that the state failed to prove its case beyond a reasonable doubt and acquitted Thompson of the aggravated battery and resisting arrest charges.

Thompson filed an eight-count complaint in this court premised on false arrest, false

---

1. The scenario discussed involves a broad, general discussion of the facts on the evening of July 20, 1995. There are numerous factual disputes as to the more intricate details surrounding the event. For example, the officers claim that they identified themselves as police officers to all three individuals as they exited their car and that their badges were visible; Joseph says they identified themselves to him in a normal tone of voice—implying that it was unlikely that Thompson or Knight overheard such identification—and their badges were not visible.

Additionally, the officers say that Knight charged Turman; Thompson and his group say the officers—whom they did not know were police officers—approached Knight in an aggressive manner which led Knight to believe that they were looking for a fight, thus, Knight defended himself accordingly.

imprisonment, malicious prosecution, and excessive force brought pursuant to 42 U.S.C. § 1983 and § 1988. There are also state claims premised on false arrest, false imprisonment, malicious prosecution, assault and battery and improper use of excessive force.[2]

Defendants seek summary judgment on the false arrest, false imprisonment, and malicious prosecution claims.

## II. SUMMARY JUDGMENT— STANDARD OF REVIEW

Under FED.R.CIV.P. 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Black v. Henry Pratt Co.*, 778 F.2d 1278, 1281 (7th Cir.1985). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Unquestionably, in determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Howland v. Kilquist*, 833 F.2d 639 (7th Cir.1987).

## III. DISCUSSION

As noted, defendants seek summary judgment on the false arrest, false imprisonment, and malicious prosecution counts. They offer one argument in support of their position: the existence of probable cause is an absolute bar to such claims; the state judge already concluded that probable cause existed;

Thompson is collaterally estopped from challenging the state judge's probable cause determination; thus, judgment should be rendered in their favor (as to the counts at issue).

Thompson concedes that if collateral estoppel principles apply, defendants' position is correct. Thompson, however, argues that collateral estoppel should not apply because, due to his acquittal of the charges, he did not have the opportunity to appeal the state judge's ruling regarding the probable cause determination.

The court holds that Thompson is collaterally estopped from relitigating the probable cause determination; accordingly, summary judgment is granted for defendants regarding the false arrest, false imprisonment, and malicious prosecution claims.

### A. Collateral Estoppel

■ Generally speaking, "once a court has decided an issue of fact or law necessary to its judgment," collateral estoppel principles "preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). More specifically, the collateral estoppel doctrine precludes relitigation of issues in a subsequent proceeding when: (1) the party against whom the doctrine was asserted was a party to the earlier proceeding; (2) the issue was actually litigated and decided on the merits; (3) the resolution of the particular issue was necessary to the result; and (4) the issues are identical. *Kraushaar v. Flanigan*, 45 F.3d 1040, 1050 (7th Cir.1995).

■ The collateral estoppel doctrine "is premised upon an underlying confidence that the result achieved in the initial litigation was substantially correct." *Standefer v. United States*, 447 U.S. 10, 23 n. 18, 100 S.Ct. 1999, 2007 n. 18, 64 L.Ed.2d 689 (1980). By prohibiting the relitigation of issues, collateral estoppel relieves parties of the cost and vexation of multiple lawsuits, conserves judicial

---

**2.** There was a claim against the Village of Hoffman Estates for negligent training and supervision of the officers, but that claim was dismissed by agreement of the parties.

resources, encourages reliance on adjudication by preventing inconsistent decisions, *Allen,* 449 U.S. at 94, 101 S.Ct. at 414–15, and, importantly, when the issue was decided initially in the state court system it promotes "the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Allen,* 449 U.S. at 96, 101 S.Ct. at 415. It is important to keep in mind, however, that collateral estoppel is an equitable doctrine and thus "should only be applied as fairness and justice require" *Jones v. City of Alton, Illinois,* 757 F.2d 878, 885 (7th Cir.1985).

### B. *Collateral Estoppel and the Illinois State Courts*

██ The federal courts are directed to "apply state collateral estoppel law in determining whether a § 1983 claim is precluded by a prior state proceeding." 28 U.S.C. § 1738; *Bailey v. Andrews,* 811 F.2d 366, 369 (7th Cir.1987) (citing *Haring v. Prosise,* 462 U.S. 306, 313, 103 S.Ct. 2368, 2373, 76 L.Ed.2d 595 (1983)). The parties will be collaterally estopped from relitigating an issue decided in the state court whenever the courts of the state from which the judgment emerged would do so. *Id.* (citing *Allen,* 449 U.S. at 96, 101 S.Ct. at 415–16).

In *People v. Armstrong,* 56 Ill.2d 159, 306 N.E.2d 14 (1973), the Illinois Supreme Court discussed the collateral estoppel doctrine. The court noted that the doctrine bars relitigation unless "additional evidence" is discovered or "peculiar circumstances" exist. *Id.* 306 N.E.2d at 15. A few years later in *People v. Mordican,* 64 Ill.2d 257, 1 Ill.Dec. 71, 356 N.E.2d 71 (1976), the court held that "peculiar circumstances" barred the applicability of the collateral estoppel doctrine to rulings made by the trial judge during the course of a criminal trial. The "peculiar circumstance" was the acquittal of the defendant. *Id.* at 74, 356 N.E.2d at 74. Because of the acquittal, the defendant never had the opportunity to obtain appellate review of the various rulings; thus, he was not foreclosed

by the collateral estoppel doctrine from relitigating the issues. *Id.*

As a result of *Mordican,* a line of cases in both the Illinois state courts and the federal courts sitting in Illinois essentially created a black-letter rule of law for both criminal and civil cases: if there was no possibility of an appeal, the collateral estoppel doctrine is inapplicable. *See, e.g., People v. Griffin,* 117 Ill.App.3d 177, 72 Ill.Dec. 750, 753, 453 N.E.2d 55, 58 (5th Dist.1983); *LaSalle National Bank v. Massachusetts Bay Ins. Co.,* No. 90 C 2005, 1997 WL 51653 (N.D.Ill. Feb. 5, 1997); *Arnold v. City of Chicago,* 776 F.Supp. 1259, 1262 (N.D.Ill.1991) ("An issue may not be given preclusive effect in the peculiar circumstance where there is no opportunity for appellate review.").

In fact, the United States Court of Appeals for the Seventh Circuit also jumped on the band wagon, holding that courts should "not apply collateral estoppel when the party against whom the prior decision is invoked did not have a full and fair opportunity to litigate," which "includes the right to appeal an adverse decision." *Gray v. Lacke,* 885 F.2d 399, 406 (7th Cir.1989). The Seventh Circuit, however, apparently reversed its course in *Prymer v. Ogden,* 29 F.3d 1208, 1213 n. 2 (7th Cir.1994), noting that the "broad" statement in *Gray* should be limited to the procedural posture of that case. The court stated that "a final judgment of a court of first instance can be given collateral estoppel effect *even while an appeal is pending,*" *Id.* (emphasis added); implying that the right to appeal the issue is not dispositive.[3]

### C. *The Court's Analysis*

██ The Court, as noted, must apply the collateral estoppel doctrine as it exists in the Illinois state system. And, as discussed, there is a line of cases—which includes federal courts in this district interpreting Illinois law—that holds the doctrine is inapplicable if there was no possibility of appellate review. Here, Thompson was acquitted, thus, precluding appellate review of the state trial judge's probable cause determination. Ac-

---

**3.** The court also noted that the law of Illinois pertaining to this issue is unclear and contradic-

tory. *Prymer,* 29 F.3d at 1213 n. 2.

cording to the "line of cases," collateral estoppel principles should not apply.

The Court, however, disagrees with such reasoning. First, the "line of cases" is based primarily on Illinois Supreme Court decisions involving criminal cases—the instant case is a civil case. As recognized by the Illinois Supreme Court, the application of the collateral estoppel doctrine in criminal cases—as compared to civil cases—is "severely limited" due to constitutional concerns. *People v. Hopkins*, 52 Ill.2d 1, 284 N.E.2d 283, 284 (1972).

■ Furthermore, the United States Supreme Court—which of course is the law of the land—noted that, although an important consideration, the availability of appellate review is not always an essential predicate of collateral estoppel. *Standefer*, 447 U.S. at 23 n. 18, 100 S.Ct. at 2007 n. 18. Thus, according to the United States Supreme Court, the lack of appellate review is not dispositive regarding the applicability of the collateral estoppel doctrine.

■ The Court finds that the determination as to the applicability of the collateral estoppel doctrine "depends upon a case by case analysis." *Butler v. Stover Bros. Trucking Co.*, 546 F.2d 544, 551 (7th Cir.1977). The doctrine should not be applied when it would be "unfair" to do so or an injustice results. *See id.* When analyzing the case to determine whether the doctrine applies, it is critical to keep in mind the logic supporting the doctrine: "that the result achieved in the initial litigation was substantially correct." *Standefer*, 447 U.S. at 23 n. 18, 100 S.Ct. at 2007 n. 18.

Here, the ruling at issue is a state trial judge's determination that probable cause existed to arrest Thompson. The judge heard testimony for two days and Thompson briefed the issue twice. The issue was certainly litigated thoroughly. The probable cause determination rested exclusively on the credibility of the witnesses—the state judge had to decide whom to believe. *See People v. Carter*, 288 Ill.App.3d 658, 224 Ill.Dec. 226, 230, 681 N.E.2d 541, 545 (1st Dist.1997) ("For purposes of motions to suppress, the [trial] court is in the best position to determine the credibility of the witnesses, to weigh testimony, and to resolve conflicts in testimony...."). Thus, even if Thompson could have appealed the judge's decision, the appeal likely would have been a loser. Indeed, because the trial judge based her decision on the credibility of the witnesses, a reversal would have resulted only if the judge's ruling was manifestly erroneous—which is highly doubtful.[4] *See People v. Enis*, 163 Ill.2d 367, 206 Ill.Dec. 604, 615, 645 N.E.2d 856, 867 (1994); *Carter*, 224 Ill.Dec. 226, 681 N.E.2d at 545. Accordingly, application of the collateral estoppel doctrine under the facts of this particular case is not unfair nor would it lead to an injustice since appeals of credibility determinations go nowhere.[5]

In summary, because: (1) the issue of probable cause was litigated thoroughly in the state court; (2) the judge's decision rested on the credibility determinations of several witnesses; and (3) the possibility of the decision being reversed on appeal was, at best, extremely low, the Court concludes that the inability to appeal the decision will not bar the application of the collateral estoppel doctrine.

## IV. CONCLUSION

Defendants are granted summary judgment regarding the counts of the complaint premised on false arrest, false imprisonment, and malicious prosecution.

---

4. Thompson makes no argument that the judge's credibility determinations were manifestly erroneous. In fact, he makes no argument at all regarding the possibility of getting the judge's probable cause determination reversed on appeal. He merely claims collateral estoppel is inappropriate because he could not appeal the decision due to his acquittal.

5. Once again, the Court stresses that Thompson makes no argument that the decision conceivably could have been reversed on appeal.